**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

GREGORY CLAWGES, JEFFREY LEACH, BRIAN MITCHELL, KURT TAYLOR, ANTONIO BROWN, SHASTA MORGAN, MADELYN LEASURE, and RAECHEL REES, individually, and on behalf of all others similarly situated,

*Plaintiffs*,

v.

RED ROBIN INTERNATIONAL, INC.,

*Defendant.*

**Civil Action No.: 1:25-cv-04090**

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR NOTICE AND CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)**

**Diana E. Wise**
WISE LAW LLC
1624 Carlyle Avenue
Suite 800
Belleville, IL 62221
Ph: 217-556-8036
Email: dwise@wiseconsumerlaw.com

***Attorney for Plaintiffs, the Collective Action, and the Proposed Classes***

**TABLE OF CONTENTS** **Page**


Index of Authorities ........ i

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. Procedural History ........ 2

B. Named Plaintiffs, Opt-Ins, and Declarants ........ 2

C. Defendant Red Robin ........ 4

D. The Documentary Evidence and Declaration Testimony Demonstrates that Hourly and Salaried Managers are Similarly Situated ........ 4

1. Uniform Job Descriptions ........ 5

2. Company-Wide Centralized Scheduling Platform and Policies Limiting Overtime ........ 5

3. Company-Wide Standardized Training Regime ........ 6

4. Company-Wide Centralized Accounting, Payroll, and HR/Personnel Systems and Policies Improperly Withholding Tips ........ 8

5. Centralized Staffing of Manager Positions ........ 8

6. Company-Wide Corporate Policies and Control of Restaurant-Level Activities ........ 9

III. ARGUMENT ........ 10

A. Conditional Certification Standards Under the FLSA ........ 10

B. The Court Should Grant Plaintiffs' Motion for Conditional Certification ........ 11

C. The Court Should Issue Notice of Right to Join in this Collective Action ........ 12

D. The Court Should Approve Plaintiffs' Proposed Notice and Notice Process ........ 13

1. Plaintiffs' Proposed Notice Timely, Accurate, and Informative .............. 13

2. Plaintiffs are Entitled to a List of all Collective Action Members ........... 13

3. The Court Should Authorize Notice by Mail, Email, and Text ................ 14

4. The Court Should Authorize a Sixty (60) Day Opt-In Period and Reminder Notice ........................................................................... 15

CONCLUSION ........................................................................................................ 15

**TABLE OF AUTHORITIES**

*Alvarez v. TTEC Services Corporation*,
2025 WL 1563712 (D. Colo. June 2, 2025) ........ 10, 12

*Beattie v. TTEC Healthcare Solutions, Inc*
2019 WL 2866559 (D. Colo. July 3, 2019) ........ 14

*Belt v. P.F. Chang's China Bistro, Inc.*,
2020 WL 3829026 (E.D. Pa. July 8, 2020) ........ 14

*Butler v. Specialized Loan Servicing LLC*,
2025 WL 2617582 (D. Colo. Sept. 10, 2025) ........ 1, 10, 11, 12, 13, 14, 15

*Caballero v. Los Compadres Liquor Store LLC*,
2025 WL 1684949 (D. Colo. June 16, 2025) ........ 10

*Conejo v. Sellan Structural Erectors*,
2025 WL 872494 (D. Colo. March 20, 2025) ........ 11, 14

*Daugherty v. Encana Oil & Gas (USA), Inc.*,
838 F. Supp. 2d 1127 (D. Colo. 2011) ........ 1, 12

*Fisher v. Michigan Bell Telephone Co.*,
665 F. Supp. 2d 819 (E.D. Mich. 2009) ........ 12

*German v. Holtzman Enter., Inc.*,
2021 WL 1087718 (D. Colo. Mar. 22, 2021) ........ 14

*Hoffman-La Roche v. Sperling*,
493 U.S. 165 (1989) ........ 12

*Jackson v. New York Tel. Co.*,
163 F.R.D. 429 (S.D.N.Y. 1995) ........ 12

*Judd v. KeyPoint Gov't Sols., Inc.*,
2018 WL 4383037 (D. Colo. July 30, 2018) ........ 12, 13

*Knox v. Jones Group*,
208 F. Supp. 3d 954 (S.D. Ind. 2016) ........ 15

*Lucyk v. Materion Brush, Inc.*,
2022 WL 3043020 (N.D. Ohio Aug. 2, 2022) ........ 15

*McMahon v. Breckenridge Grand Vacations, LLC*,
2021 WL 4170462 (D. Colo. Sept. 14, 2021) ........ 10

*Mott v. TSD Telecom Service LLC*,
2025 WL 692564 (D. Colo. March 4, 2025) ........ 14

*Perez v. Denco Construction LLC*,
2025 WL 2639210 (D. Colo. Sept. 12, 2025) ........ 1, 10, 12, 14, 15

*Thiessen v. Gen. Elec. Capital Corp.*,
267 F.3d 1095 (10th Cir. 2001) ........ 1, 10

*Wilfong v. TTEC Services Corp.*,
2025 WL 580474 (D. Colo. Feb. 21, 2025) ........12, 14

Statutes

*29 U.S.C. § 216(b)* ........ 1, 2, 10, 15

# I. INTRODUCTION

Plaintiffs Gregory Clawges, Jeffrey Leach, Brian Mitchell, Kurt Taylor, Antonio Brown, Shasta Morgan, Madelyn Leasure, and Raechel Rees (collectively "Plaintiffs"), submit this Brief in Support of Plaintiffs' Motion for Notice and Conditional Certification Pursuant to 29 U.S.C. § 216(b), on behalf of (1) all current and former Assistant/Service Managers, Kitchen Managers, Assistant General Managers, and General Managers (collectively "Salaried Managers"), who were misclassified and paid by Red Robin International, Inc. ( "Red Robin") as exempt employees and, thus, were denied overtime pay, as well as (2) all current and former Shift Supervisors and Associate Managers (collectively "Hourly Managers") and Salaried Managers who were prohibited by Red Robin from keeping their earned tips/gratuities.

Such conditional certification would be in line with the overwhelming, long-standing precedent in this Court and this Circuit granting nationwide conditional certification when plaintiffs meet their "minimal burden" of "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" – as this is a "lenient standard," which "typically results in conditional certification." *See Perez v. Denco Construction LLC*, No. 24-cv-02766-RMR-NRN, 2025 WL 2639210, at *2, *4 (D. Colo. Sept. 12, 2025); *Butler v. Specialized Loan Servicing LLC*, No. 24-cv-01087-PAB-SBP, 2025 WL 2617582, at *2 (D. Colo. Sept. 10, 2025); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 109, 1102 (10th Cir. 2001). Here, as shown more fully below, Plaintiffs have provided not only substantial allegations *but also* supporting evidence and documentation that the putative collective action members were together the victims of a single decision, policy, or plan.

## II. FACTUAL BACKGROUND

### A. Procedural History

On September 10, 2025, Plaintiffs Casey Lemasters, Damon Snyders, and James Price filed a Complaint against Red Robin in the Southern District of Illinois, alleging violations of the FLSA and state wage laws on behalf of themselves and all other similarly situated employees under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23. *See* Ex. 2 (*Lemasters et al. v. Red Robin: Complaint*). On October 2, 2025, the parties entered into a Tolling Agreement and jointly moved to stay those proceedings. *See* Ex. 3 (*Lemasters et al. v. Red Robin: Joint Motion to Stay Case and Tolling Agreement*). On December 19, 2025, Plaintiffs Gregory Clawges *et al*. filed the instant Complaint alleging similar FLSA violations. *See* Complaint (ECF Doc. 1).

### B. Named Plaintiffs, Opt-Ins, and Declarants

Plaintiff Gregory Clawges worked at Red Robin between 2016 and 2023 and was a General Manager in Des Peres, MO. *See* Complaint (ECF Doc. 1) at ¶ 39. Plaintiff Jeffrey Leach worked at Red Robin between 2021 and 2025 and was an Associate Manager (hourly) in Dardenne Prairie, MO, as well as an Assistant General Manager and then General Manager in O'Fallon, MO location. *See* Complaint (ECF Doc. 1) at ¶ 41. Plaintiff Brian Mitchell worked at Red Robin between 2013 and 2025 and was a Kitchen Manager in Chesterfield, MO. *See* Complaint (ECF Doc. 1) at ¶ 43. Plaintiff Kurt Taylor worked at Red Robin between 2021 and 2024 and was an Associate Manager (hourly) in Fairview Heights, IL. *See* Complaint (ECF Doc. 1) at ¶ 45. Plaintiff Antonio Brown worked at Red Robin between 2023 and 2024 and was an Assistant General Manager in Richmond Heights, MO, but performed his training in Fairview Heights, IL. *See* Complaint (ECF Doc. 1) at ¶ 47. Plaintiff Shasta Morgan worked at Red Robin between 2004 and 2023 and was an Assistant

General Manager in Auburn, WA. *See* Complaint (ECF Doc. 1) at ¶ 49. Plaintiff Madelyn Leasure who worked at Red Robin between 2021 and 2025 and was a Shift Supervisor (hourly) in Olympia, WA. *See* Complaint (ECF Doc. 1) at ¶ 51. Plaintiff Rachael Rees worked at Red Robin between 2014 and 2025 and was a Shift Supervisor (hourly) in Portland, OR. *See* Complaint (ECF Doc. 1) at ¶ 53. Casey Lemasters was a General Manager at the Richmond Heights, MO location. *See* Ex. 2, ¶ 19. Damon Snyder was a General Manager in Edwardsville, IL. *See* Ex. 2, ¶ 21. James Price was an Assistant General Manager in Edwardsville, IL. *See* Ex. 2, ¶ 23.

Salaried Manager Plaintiffs and declarants were all employed by Red Robin as Salaried Managers and were all classified as exempt and not paid overtime. *See* Complaint (ECF Doc. 1); Ex. 4 (*Decl. of Clawges*), Ex. 5 (*Decl. of Leach*), Ex. 6 (*Decl. of Mitchell*), Ex. 7 (*Decl. of Brown*), Ex. 8 (*Decl. of Morgan*), Ex. 9 (*Decl. of Taylor*), Ex. 10 (*Decl. of Rees*), Ex. 11 (*Decl. of Lemasters*), Ex. 12 (*Decl. of Snyder*), and Ex. 13 (*Decl. of Price*), ¶ 3. Salaried Managers are all regularly scheduled to work, and regularly work, more than 40 hours in a workweek. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 10. Red Robin requires its restaurants nationwide to maintain lean staffing of its hourly workers; thus, Salaried Managers consistently spend the vast majority of their time performing the same physical labor and customer-service related duties as non-exempt, hourly paid workers. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 9; Complaint (ECF Doc. 1) at ¶¶ 2-5, 11, 19, 21, 31, 120, 128-129, 132-148, 150, 382-383.

Salaried and Hourly Manager Plaintiffs were all employed by Red Robin as Hourly and Salaried Managers and were prohibited by Red Robin to keep tips/gratuities they earned; instead, Red Robin either kept these tips or required the Hourly and Salaried Managers to shift these tips to a "Front of House" employee who had not participated in earning the tip. *See* Ex. 4, 5, 6, 7, 8,

9, 10, 11, 12, and 13 (*Declarations*), ¶¶ 10-12; Complaint (ECF Doc. 1) at ¶¶ 22, 34, 62, 72-74, 116-117, 121, 153-154, 392-396.

### C. Defendant Red Robin

Red Robin is a Nevada corporation with its principal headquarters in Colorado. *See* Complaint (ECF Doc. 1) at ¶ 55. Red Robin Gourmet Burgers, Inc. is a publicly traded corporation reporting $1.25 billion in revenues, and directly or indirectly owns the outstanding capital stock or membership interests in Red Robin and its other subsidiaries. *See* Ex. 14, p. 25 (*2024 10-K*).

Red Robin internally classifies and pays all Salaried Managers as salaried and exempt from the overtime pay requirements of the FLSA based solely on their job title, regardless of the location, the location's size, the employee's experience, the employee's supervisor, and the volume of sales in the restaurant in which the Salaried Manager worked. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 6; Complaint (ECF Doc. 1) at ¶ 131. Red Robin internally classifies all Hourly and Salaried Managers as "management" and, thus, by Red Robin's internal and company-wide policy, prohibits them from keeping any earned tips/gratuities based solely on their job title, regardless of their location, the location's size, the employee's experience, the employee's supervisor, and the volume of sales in the restaurant in which the Hourly and Salaried Manager worked. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 11.

### D. The Documentary Evidence and Declaration Testimony Demonstrates that Hourly and Salaried Managers are Similarly Situated

On August 2, 2018, a collective and class action lawsuit, *Outlaw v. Red Robin*, was filed in New York on behalf of Kitchen Managers and Assistant Managers, alleging unpaid overtime under the FLSA and state laws. In that case, the magistrate judge recommended conditional

certification and notice, finding: (1) Uniform Job Descriptions, (2) Company-Wide Policies, Training and Systems, (3) Centralized Staffing of Manager Positions, and (4) Declarations Show Practice of Unpaid Overtime. *See* Ex. 15 (*Magistrate Recommendation for Notice and Conditional Certification*). Red Robin has not changed any of their policies, patterns, or practices regarding these four areas. Further, Plaintiffs in this action offer declarations from eleven (11) former Hourly and Salaried Managers across four (4) states, multiple regions, and twelve (12) locations across the country and evidence of company-wide corporate policies.

### 1. Uniform Job Descriptions

Job postings for each job title on Red Robin's website confirm the same duties, responsibilities, and requirements for Hourly and Salaried Manager positions throughout the United States. *See* Ex. 16 (*Red Robin Job Postings*). The Plaintiffs' and additional declarations submitted allege the same duties and responsibilities for Hourly and Salaried Manager positions throughout the nation. These declarations are based on personal knowledge from the Declarants' experience working as Hourly and Salaried Managers; from interacting, communicating, and working with other Hourly and Salaried Managers, both in their and other locations; and from attending meetings and/or conferences with other Hourly and Salaried Managers, both in their and other locations. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶¶ 19-21.

### 2. Company-Wide Centralized Scheduling Platform and Policies Limiting Overtime

Red Robin has a company-wide policy of limiting overtime for all of its locations across the United States. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 8; Complaint (ECF Doc. 1) at ¶¶ 59, 115. Red Robin has implemented extensive electronic systems to allow corporate control over restaurant-level labor hours in real time, which implements their company-wide

policy of limiting overtime hours, including: (1) in 2012, Red Robin implemented a new Labor Management System, *see* Ex. 17, p. 5 (*2012 4th Earnings Call*) ("Another example is the new labor management system that will help … meet out ideal systemwide labor targets."); (2) in 2015, Red Robin implemented the Watson Labor Management System, *see* Ex. 18, p. 6 (*2014 4th Earnings Call*); and (3) in 2022, Red Robin implemented the "HotSchedules" platform*, see* Ex. 19, p. 4 (*2022 3rd Earnings Call)*. "HotSchedules uses predictive insight to reduce overtime, cut waste, and make sure every shift is fully covered without burning out your team." *See* Ex. 20 (*HotSchedules Website*). Red Robin's Quarterly Earnings Calls also establish Red Robin's centralized, electronic scheduling platforms and company-wide policy, practice, and pattern of limiting overtime. *See* Ex. 21, p. 16 (*2023 3rd Earnings Call)*; Ex. 22, p. 6 (*2023 4th Earnings Call*); Ex. 23, p. 17 (*2024 3rd Earnings Call)*; and Ex. 24, p. 3 (*2025 1st Earnings Call).*

### 3. Company-Wide Standardized Training Regimen

Red Robin implements the same, or substantially similar, instructions, supervision, evaluation tools, and training for all of its Hourly and Salaried Managers across the nation. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 5. Red Robin has a centralized Learning & Program Development group through Red Robin's corporate headquarters that establishes and enforces its standardized training regimen and "Standard Operating Procedures." *See* Ex. 25 (*Training & Development Coordinator*). Red Robin has extensive corporate positions centralizing the training of its restaurant-level employees to act in a similarly-situated fashion. S*ee* Ex. 26 (*Manager Learning & Program Development*); Ex. 27 (*Senior Learning & Development Consultant*).

When new Hourly and Salaried Managers are hired, they are all trained through the Red Robin Management Foundations training program to perform all of the non-exempt, physical

hourly employee tasks. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 14. To satisfactorily complete the Management Foundations training program, all Hourly and Salaried Managers must demonstrate the ability to satisfactorily complete these non-exempt, physical hourly employee tasks. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 15. As Hourly and Salaried Managers are trained in all of the restaurant-level non-exempt, physical hourly employee tasks, Hourly and Salaried Managers are frequently moved among restaurant areas without having to be retrained for each area. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 16. Hourly and Salaried Managers are also transferred between restaurant locations without any retraining for the new location. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 17. Specifically, Clawges and Lemasters both transferred to new locations without any additional training. *See* Ex. 4 and 11 (*Declarations*), ¶ 2. Once established in a "management" role, Hourly or Salaried Managers still follow Red Robin's Learning Management System, from which Red Robin's corporate headquarters creates and disseminates a uniform training schedule and training checklist specifying the training that must be conducted each day for all Managers across the United States, regardless of the position or location in which they are going to be working. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 22.

Red Robin's SEC 10-K filings also clearly establish its standardized training regimen. *See* Ex. 14, p. 4 ("We strive to maintain quality and consistency in each of our restaurants through the training and development of Team Members and the establishment of, and adherence to, high standards"). Red Robin's Quarterly Earnings Calls also establish Red Robin's standardized training regimen and its company-wide control over training and operations within Red Robin. In 2022, Red Robin CEO Murphy noted: "In the big picture, we have a focused action plan to address

a few key areas. Starting with connection conversations between restaurant leaders and team members to not only help refine and improve our team member experience, and run great shifts, but also provide quality training with a focus on back to the basics execution.**”** *See* Ex. 28, p. 4 (*2022 2nd Earnings Call).* For the fourth quarter of 2024, Red Robin CEO Hart stated: “We’ve had to retrain every single person in the company on not only what we’re doing and its expectations from a hospitality perspective, but how do we cook product and all of that.” *See* Ex. 29, p. 10-11 (*2024 4th Earnings Call).*

**4. Company-Wide Centralized Accounting, Payroll, and HR/Personnel Systems and Policies Improperly Withholding Tips**

Red Robin has a company-wide policy of prohibiting all Hourly and Salaried Managers from keeping the tips they earned. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶¶ 11-13; Complaint (ECF Doc. 1) at ¶¶ 22, 34, 62, 72-74, 116-117, 121, 153-154, 392-396. Red Robin’s Manager of Restaurant Accounting “[s]pearheaded changes to cash policies as part of an organizational electronic tip rollout project which included working with vendors to change service agreements and revamping cash handling best practices.” *See* Ex. 30, (*Manager of Restaurant Accounting*). Red Robin has centralized Accounting, Payroll, and HR / Personnel Systems through their corporate headquarters in Colorado and provides the same company-wide standard benefits for all Hourly and Salaried Managers. *See* Ex. 31 (*Accounting, Benefits, Payroll, HR Systems*); Ex. 32 (*Job Posting for Senior Director of Infrastructure Operations and Support*); Ex. 33 (*Payroll Specialist*); *See* Ex. 34 (*Job Posting for Benefits & HR Operations Specialist*); Ex. 35 (*Job Posting for Senior Financial Systems Administrator*); Ex. 36 (*Benefits & Rewards).*

**5. Centralized Staffing of Manager Positions**

Red Robin has a centralized system of staffing all its Hourly and Salaried Manager

positions using a single online platform and utilizing corporate talent recruiters to track, maintain, and make restaurant manager staffing recommendations, rather than at the level of individual restaurants. *See* Ex. 37 (*Online Hiring Platform*). Red Robin has a Head of Talent Acquisition, as well as a team of corporate Talent Recruiters and Senior Talent Recruiters. *See* Ex. 38 (*Head of Talent Acquisition*); Ex. 39 (*Senior Talent Recruiter*); Ex. 40 (*Senior Talent Acquisition Recruiter)*.

### 6. Company-Wide Corporate Policies and Control of Restaurant-Level Activities

Red Robin has extreme corporate control of its restaurant-level operations through its implementation of nationwide policies, which leads all Hourly and Salaried Managers to be similarly situated. When Red Robin's current Chief of Staff was the Director of HR Employee Relations, she "[c]ontribute[d] to the development of HR policy, procedure and systems for employee relations, performance management, benefits, and employment practices; including the Team Member Handbook." *See* Ex. 41 (*Chief of Staff & Former Director, HR Employee Relations*). Red Robin's corporate-derived Team Member Handbook applies nationwide to all of its restaurant-level employees, and Hourly and Salaried Managers are not only expected to comply with the Team Member Handbook, they can be terminated if they fail to do so. *See* Ex. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 (*Declarations*), ¶ 24. Red Robin's Quarterly Earnings Calls and Investor Presentations also establish their corporate-derived company-wide policies that control restaurant-level activities in order to maintain consistency and uniformity throughout all of its locations. See Ex. 42, p. 6, 19 (*Investor Presentation, 2022*); *See* Ex. 20, p. 3-4 ("Red Robin will be an operations-driven brand with a maniacal focus on quality execution and being of service to our operators. We are also looking at how we can improve the efficiency and effectiveness for how we operate our business overall."); Ex. 43, p. 3 (*2023 1st Earnings Call*).

## III. ARGUMENT

### A. Conditional Certification Standards Under the FLSA

Section 216(b) of the FLSA authorizes a collective action "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In this Court, "[t]here is a two-step approach for determining whether plaintiffs are 'similarly situated' for purposes of FLSA collective action certification." *Butler*, 2025 WL 2617582, at *2; citing to *Thiessen*, 267 F.3d at 1105. "A court's initial certification comes at the notice stage, where courts determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members." *Id.*; citing to *Thiessen*, 267 F.3d at 1102. "Plaintiff is required to provide 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* This is a "lenient standard," "which typically results in conditional certification of a representative class." *Id.*; *Caballero v. Los Compadres Liquor Store LLC*, No. 24-cv-01569-PAB-MDB, 2025 WL 1684949, at *2 (D. Colo. June 16, 2025); *Alvarez v. TTEC Services Corporation*, No. 24-cv-02847-PAB-SBP, 2025 WL 1563712, at *2 (D. Colo. June 2, 2025). In this Court, the evidentiary burden at the first stage is "low" or "minimal." *See Perez*, 2025 WL 2639210, at *4. In *McMahon*, this Court rejected defendant's argument that plaintiff did not sufficiently allege that she was similarly situated to any potential class member, finding the "burden on the Plaintiff at this stage is low" and "[t]o meet this minimal burden, Plaintiff provided the Court with allegations of Defendant's business practices, along with supporting documents that, collectively, indicate a pattern of similar treatment by the Defendant of all its sales personnel." *McMahon v. Breckenridge Grand Vacations, LLC*, No. 20-cv-00754-CMA-STV, 2021 WL 4170462, at *3 (D. Colo. Sept. 14, 2021).

Further, factual determinations at the first stage are not proper. *See Butler*, 2025 WL 2617582, at *6 ("Moreover, [defendant] asks the Court to make a factual determination that an unlawful policy did not exist, which is not proper at the notice stage."). The court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims during the notice stage. S*ee Conejo v. Sellan Structural Erectors*, No. 23-cv-02930-SKC-STV, 2025 WL 872494, at *2 (D. Colo. March 20, 2025).

**B. The Court Should Grant Plaintiffs' Motion for Conditional Certification**

Here, Plaintiffs have provided not only substantial allegations *but also* supporting evidence and documents that the putative collective action members were together the victims of a single decision, policy, or plan. First, Plaintiffs substantially allege all Salaried Managers were victims of Red Robin's company-wide policy of misclassifying Salaried Managers as exempt in order to avoid paying them overtime. To support these substantial allegations of improper pay policies, Plaintiffs have provided declaration testimony about Red Robin's company-wide policies and practices; Red Robin's own SEC filings, Investor Presentations, and Quarterly Earnings Calls Transcripts; Red Robin's own job postings; Red Robin's own corporate employees' LinkedIn Profiles; Red Robin's own payroll, benefits, HR/personnel electronic systems; and Red Robin's own website. Second, Plaintiffs substantially allege all Hourly and Salaried Managers were victims of Red Robin's company-wide policy of prohibiting Hourly and Salaried Managers from keeping tips they earned; instead, these tips were either retained by Red Robin or shifted to an hourly, front-of-house employee (ie, a host, server, bartender) who had not participated in earning the tip. To support these substantial allegations of improper pay policies, Plaintiffs have provided declaration testimony about Red Robin's company-wide policies and practices and Red Robin's own corporate

employees' LinkedIn Profiles. Thus, as Plaintiffs' have satisfied their "minimal" burden for conditional certification, this Court should grant Plaintiffs' motion for conditional certification.

### C. The Court Should Issue Notice of Right to Join in this Collective Action

"If the plaintiff meets [the lenient] standard [for conditional certification], the Court may order the defendant to provide contact information for all employees and former employees that may be eligible to participate in the collective action, and the Court may approve a form of notice to be sent to all of those individuals." *Perez*, 2025 WL 2639210, at *2; citing to *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 169–74 (1989). Failure to provide prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. *See Fisher v. Michigan Bell Telephone Co.*, 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009); *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995). "Obviously, current or former employees cannot opt in if they do not know about the pending action." *Perez*, 2025 WL 2639210, at *2. Notice should be provided to all putative class members, "even if some individuals who receive notice are ultimately found to not be similarly situated." *See Butler*, 2025 WL 2617582, at *7; citing to *Daugherty*, 838 F. Supp. 2d at 1133. Further, the potential presence of arbitration agreements, whether ultimately valid or not, does not affect conditional certification or the issuance of notice, as this Court has noted "the issue of whether putative class members are subject to arbitration agreements should be raised at the second stage of the certification analysis." *Alvarez*, 2025 WL 1563712, at *3; citing to *Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2018 WL 4383037, at *12 (D. Colo. July 30, 2018), *report and recommendation adopted*, 2018 WL 7142193 (D. Colo. Dec. 4, 2018). "Moreover, courts in this District and elsewhere have held that the issue of arbitration generally is irrelevant to the 'similarly situated' inquiry." *Wilfong v.*

*TTEC Services Corp.*, No. 24-cv-01076-CNS-KAS, 2025 WL 580474, at *5 (D. Colo. Feb. 21, 2025); citing *Judd*, 2018 WL 4383037, at *11.

Plaintiffs anticipate Red Robin will attempt to limit or object to this Court and Circuit's established conditional certification and notice processes due to the presence of allegedly valid arbitration agreements. It is clearly established in this District that arbitration agreements, whether ultimately valid or not, do not affect conditional certification or the issuance of notice at this stage. Additionally, Plaintiff Gregory Clawges did not sign an arbitration agreement with Defendant. Thus, as Plaintiffs' have satisfied their "minimal" burden for conditional certification, this Court should approve Plaintiffs' Proposed Notice.

### D. The Court Should Approve Plaintiffs' Proposed Notice and Notice Process

#### 1. Plaintiffs' Proposed Notice is Timely, Accurate, and Informative

This Court has found that Notice must contain the following necessary information: "[t]he Notice informs putative class members of the parties involved, the parties' general allegations, information about the collective action designation, and how to opt in." *Butler*, 2025 WL 2617582, at *7. Additionally, this Court has found that Notice should "provide[ ] that opt-in plaintiffs must return consent forms to plaintiff's counsel within 60 days from the date of mailing of the Notice." *Id*. This Court should approve Plaintiffs' Proposed Notice as it follows this District's requirements and, importantly, as Plaintiffs took care to draft a Proposed Notice that is fair, accurate, and fashioned in a similar manner to notices that are regularly approved in this District.

#### 2. Plaintiffs Are Entitled to a List of all Collective Members

To facilitate timely notice to Red Robin's current and former Hourly and Salaried Managers, Plaintiffs request that the Court order Defendant, within ten (10) days of the entry of

the Order conditionally certifying this action, to identify each FLSA Collective member by names, all known mailing addresses, dates of employment, job title, job location, all known telephone numbers, and all known email addresses. This Court has an established track record of requiring defendants to produce to plaintiffs' counsel a list of putative collective action members and their identifying information. *See German v. Holtzman Enters., Inc.*, No. 19-cv-03540-PAB-STV, 2021 WL 1087718, at *4 (D. Colo. Mar. 22, 2021); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 18-cv-03098-RM-NRN, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019). Additionally, a long line of recent FLSA collective action cases in this District have ordered defendants produce to plaintiffs' counsel a list of putative collective action members and their identifying information. *See Perez*, 2025 WL 2639210, at *6; *Butler*, 2025 WL 2617582, at *9; *Conejo*, 2025 WL 872494, at *3; *Mott v. TSD Telecom Service LLC*, No. 24-cv-00185-RMR-SBP, 2025 WL 692564, at *4-5 (D. Colo. March 4, 2025); *Wilfong*, 2025 WL 580474, at *7.

**3. The Court Should Authorize Notice by Mail, Email, and Text Message**

To facilitate timely notice to Red Robin's current and former Hourly and Salaried Managers, Plaintiffs request that the Court authorize Plaintiffs' proposed form of Notice (**Exhibit 1**) and implementing a procedure whereby the Notice of Plaintiffs' FLSA claims are sent via U.S. Mail, email, and text message). Recognizing the reality of modern communication and its potential to advance the remedial goals of the FLSA, this Court and other courts in the Tenth Circuit have found it appropriate to distribute notice by way of e-mail and text in addition to first-class mail. *See e.g., Perez*, 2025 WL 2639210, at *6; *Butler*, 2025 WL 2617582, at *9. Further, email and text notice is especially appropriate in light of the turnover rate in the restaurant industry. *See Belt v.*

*P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020); *Knox v. Jones Group*, 208 F. Supp. 3d 954, 963-64 (S.D. Ind. 2016).

Finally, Plaintiffs' Proposed Notice includes the use of Plaintiffs' Counsel's website, as well as a separate website, www.redrobinovertimelawsuit.com, to allow the putative members to opt-in. In *Butler*, this Court found "it is proper for plaintiff to use a website to communicate with potential opt-in plaintiffs." *Butler*, 2025 WL 2617582, at *8; referencing *Lucyk v. Materion Brush, Inc.*, 2022 WL 3043020, at *5 (N.D. Ohio Aug. 2, 2022).

#### 4. The Court Should Authorize a Sixty (60) Day Opt-In Period and Reminder Notice

Plaintiffs request, in line with this Court's prior cases, that the Court authorize a standard opt-in period of sixty (60) days, measured from the date the Court-authorized Notice is sent, to give members of the FLSA Collective Action ample time to join this case, with one reminder email and text message sent thirty (30) days after the initial notice. *See e.g., Perez*, 2025 WL 2639210, at *5; *Butler*, 2025 WL 2617582, at *9.

## IV. CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), enter an Order:

(1) Conditionally certifying the proposed FLSA Collective Action;

(2) Requiring Defendant to identify all putative collective members;

(3) Authorizing Plaintiffs' proposed form of Notice (**Exhibit 1**);

(4) Appointing the undersigned counsel as counsel for the FLSA Collective; and

(5) Giving members of the FLSA Collective Action sixty (60) days to join this case.

DATED: January 13, 2026 Respectfully Submitted,

By: */s/ Diana E. Wise*
**Diana E. Wise**
WISE LAW LLC
1624 Carlyle Avenue
Suite 800
Belleville, IL 62221
Ph: 217-556-8036
Email: dwise@wiseconsumerlaw.com

***Attorney for Plaintiffs, the Collective Action, and the Proposed Classes***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 13, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record.

By: */s/ Diana E. Wise*
Diana E. Wise
WISE LAW LLC
1624 Carlyle Avenue
Suite 800
Belleville, IL 62221
Ph: 217-556-8036
Email: dwise@wiseconsumerlaw.com